# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

Abd-el-Illah Serir,          )
)
    Plaintiff,         )
)
                      )  vs. Case No. 1:20-cv- 01031-MMM-JEH
)
Illinois Central College,   )
)
    Defendant.       )

**Plaintiff's Responses in Opposition to the Defendant' Summary Judgement**

With a good faith and knowledge, pursuant to Fed. R. Civ. P. 56 and CDIL-LR 7.1 (D), Plaintiff's Abd-el-Illah Serir ("Serir"), Pro Se Litigant, move the court to deny Defendant Community College District No. 514, a/k/a Illinois Central College ("ICC"), attempt for Summary Judgement and in favor to the Plaintiff's quest for righteousness and employment equity.

## I.    Introduction

The reasons provided by Illinois Central college's Attorney Mrs. Swise to dismiss the case do not articulate and the content provided is a pretext and ambiguous in the content and in the establishment of the facts.

Plaintiff's Abd-el-Illah Serir was hired by Illinois Central College ("ICC") in or around December 2014 as a part-time computer networking adjunct faculty. ICC has failed to promote the plaintiffs into full time Tenure Track computer networking position in four-times December 22nd 2014, May 25th 2017, December 1st 2017 and December 11th 2017 for which plaintiff's applied and qualified for. The position remained open and ICC continued to look for applicants with plaintiff's qualifications.

On December 7th 2017, Plaintiff's complained to Human Resources Vice president retire Dr. Marti BloodSaw and Vice president of education Dr. Emmanuel Awuah recently resigned because of race discrimination. I made the steps to complain to HR because of the numerous incidents of discrimination, humiliation and oppression. In a good faith, plaintiffs were hoping to resolve the problem of discrimination amicably. Thereafter, ICC has failed to assign Plaintiff's to teach any classes since December 7th 2017.

Plaintiffs believes he has been discriminated against because of age 54 (YOB:1963) and in retaliation for bringing the issue of discrimination to the HR. Plaintiff's believe he has been discriminated against because of his religion, Muslim, and in retaliation for engaging in protected activity.

As was stated in the formal complaint letter addressed to retired vice president Dr. Marti Bloodsaw dated December 7th 2017 plaintiffs was subject to employment discrimination by fellow coworkers Dean Julie Howar, Ms. Paulette Sibrel and Mr. Doug Peterson based on age and ethnicity. Before, Plaintiff's shared his grievances with former vice president of diversity and International Student Dr. Rita Ali.

All started in mid-December 2014 when Plaintiff's went for Tenure Track computer networking interview, two panelists were in the room; the dean Julie Howar and Mr. Doug Peterson. Unexpectedly, **RIGHT** after the interview Plaintiff's was offered to teach "CMNET 140 Windows administration" on January 12th 2015 as an **Adjunct Faculty** at ICC 's Business, Legal and Information services ("BLIS") Department. Plaintiffs was told after being interviewed that the search committee canceled the search because of a **LOW NUMBER of APPLICANTS** and the position will be reposted. Plaintiffs was not notified of a failed search until the interview process finished.

In mid-January 2015, Human Resources department contacted Plaintiff's by email to change his application from Tenure Track computer networking to Adjunct faculty *(Application Changed EXHIBIT A)* and **by the end of the semester around June 2015** Plaintiff's email was deactivated and **TERMINATED.** After weeks and thorough investigation for being terminated without a valid reason, Dr. Rita Ali invited us to her office in the presence of the dean Julie Howar and Ms. Margaret Lawler from the search committee. When plaintiffs asked the dean Julie Howar "Why did you not answer my calls and emails" and "why was I terminated" dean Julie Howar told the Plaintiff and the attendees "I **HAVE NOTHING AGAINST YOU**", "**I DID NOT ASSIGN YOU CLASSES BECAUSE OF LOW ENROLLMENT."** After that, Plaintiff's was escorted to the door and he was told he will hear back from them in a couple days. Ms. Margaret Lawler sent an email to the Plaintiff asserting that dean Julie Howar is going to contact the Plaintiff, which she indeed did, and assigned the Plaintiff two classes to teach in the spring of 2017 CMNET 220 "Windows Server 2012 R2 Services" and CMNET 230 "Windows server 2012 R2 Administration." *(Meeting with Dr. Rita Ali, Dean Julie & Margaret Lawler EXHIBIT B).*

Back in 2015 when Plaintiff started teaching, I asked for an office **as required by the FACULTY HANDBOOK** to be available to assist students during office hours and through appropriately scheduled appointments and to perform my daily prayers; dean Julie Howar rejected my request period and did not offer me as stated the key to the share work space provided to adjuncts faculty. If she had given me the key, I would have not made a big deal about it and as a matter of fact, nowhere the **key for a shared office** was mentioned during this case until I read it in the summary judgement and the dean's affidavit. Then, I started performing my prayers in the same classroom I was teaching and I never **ADMITED THAT I WAS PERMITTED** or given the permission to perform my

prayers in an empty classroom. In fact, I was uncomfortable and disturbed when I was performing my prayers in the classroom I was teaching.

By the end of the semester on or around May 2017, the Tenure track networking position was reposted, plaintiff reapplied for it and was selected for a Skype interview by the search committee. Ten days later, Plaintiff, Abd-el-Illah Serir, was called for a face-to-face interview where I met with the faculty panel Mr. Kevin Wells, Ms. Kim Hawthorne, Ms. Paulette Sibrel, Mr. Doug Peterson, Raymond Kowalczyk and dean Julie Howar all the faculty mentioned work under the dean Julie Howar. After, I answered all the faculty committee questions; I asked the faculty panel about their experience working at ICC. Mr. Doug Peterson answered with a sarcastic tone "DO NOT EXPECT TOO MUCH TOWARD YOUR RETIREMENT" the laughter was loud and I just kept it inside me and did not say anything. Then, the Dean escorted me to the interim vice president Dr. Lisa Stich where we had a great discussion about the students and the college in general. A month later, the Dean Julie Howar called me on the phone to see her in her office. She then told me she can't offer me the position because it's a "Failed Search" again and because of a "LOW NUMBER OF APPLICANTS" and repeatedly expressing that this position is a "Tenure Track contract" making reference to my age and my personality (1:20-cv-01031-MMM-JEH # 27 Page 5 of 8.)

During Plaintiff's terms of teaching at ICC and since 2015, Plaintiff, Abd-el-Illah Serir, did not receive any complaints or write ups from the dean Julie Howar concerning lack of receptiveness to students' complaints and criticism. As a faculty of more than ten years of experience and teaching in both graduate level and undergraduate at both Robert Morris University and DeVry University I have always bind by the syllabus and the university policy. I have never had any complaint about the work load until Dean Julie in or around October 2017 called me on the phone and mentioned that students in CMNET 150 "Computer Hardware and Software" Complained about the volume of

work and specifically about the outline assignment that enabled the student to fill in the gap about the chapter before coming to the class and to be prepared for the class discussions. I rushed and deleted the assignment from blackboard and I never retaliated against any students. *(Blackboard/ audio EXHIBIT C)*

Because of continuous harassment and humiliation, Plaintiff was instructed verbally by the dean Julie Howar to go and observe Dr. Doug Peterson and Ms. Paulette Sibrel's class to improve Plaintiff's class management skills according to their perceptions and what their hearts concealed is far worse. Ms. Paulette Sibrel and Mr. Doug Peterson objected and instead they started coming to my class and sit without letting me know and later sent me an email to schedule a monthly meeting with them. I conformed to the situation hoping they were honest to succeed in obtaining a Tenure Track position as was promised. Plaintiff did not express any resentment instead I was very happy and cooperative where I attended all the meetings. Class observations and students' evaluations as indices to proof I had good performances and students loved me. *(Class observations EXHIBIT F); (Students Class Evaluations K)*. What I know for a fact is that no other faculty member was provided treatment and humiliation like I faced. I believe strongly, they tried to trap and facilitate a stressful situation for me that I had never experienced during my seven years plus of teaching.

The story about the female gender bias is untrue and fabricated and it does not fit at all as will be shown later in a document. The opposing council by its attorney Ms. Swise did not release any document from the person in concern and released instead an email document from a male student. In addition, I never knew about the female gender bias until revealed to me by the EEOC. I was not included in their presumed complaint investigation nor they shared the outcome with me until revealed to me by the EEOC investigator Mrs. Grace Gountanis. In accordance with ICC policy, when there is a student complaint against an employee, the college conducts an **IMMEDIATE**

investigation and **Informs** the instructor of the issue and offer remediation which did not happened at all. *(ICC's Interoffice Memorandum dated January 26th,2018 EXHIBIT D) (Aff. Brandon Vissering) (AFF. Serir)*

Concerning the testimony of Tracey Evans administrative assistance to dean Julie Howar is not true. She twisted all the discussions we had following the job interview I had on December 1st 2017. I met her early morning while she was making the coffee for the faculty. I admit I chatted with her for a couples of minutes before heading to my class about the mistreatment I was facing but I never raised my voice to her nor was I combative. Why would I have?

Plaintiff applied to the same Tenure Track computer networking four times since 2014 and ICC continued to look for applicants with plaintiff's Higher learning commission qualification.

Last but not least, Dean Julie Howar made the determination not to retain Plaintiff as adjunct faculty after the fall term of 2017 in the same token vice president retire Dr. Marti BloodSaw stated in her letter dated January 26th 2018 as part of professional development, it is recommended that Plaintiff pursue a program focused on classroom techniques to avoid issues of gender bias. This is a pure indication that the documents provided are fabricated and they don't correlate at all. In addition, Plaintiff was instructed to reach to the dean to access to such program and to consider the letter as an official notification of the issue and recommended remedy. Looking attentively at HR vice president Mrs. Marti Bloodsaw letters dated on January 22nd and 26th 2018, a huge contradiction that proof their intent was not truthful. *(ICC's Interoffice Memorandum dated January 26th and 22nd 2018 EXHIBIT D)*

Plaintiff maintained without a shadow of a doubt that ICC discriminate against the plaintiff and the conflicting information and presumed investigation and recommended remedy are all fabricated and untrue to deviate from the real discrimination and retaliation. The whole content provided is sort of "Advertorial" that lacks consistency and establishment of facts.

With good faith and knowledge, Plaintiff Abd-el-Illah Serir maintained his claim of employment discrimination (age, religion and retaliation) incurred by ICC employer and successfully exhaust his administrative remedies that were included in the EEOC charge and were asserted in the Complaint. As stated above in the preamble, there are genuine disputes as for most of the material facts regarding ICC's affirmative defenses and oppose with tangible reasons to grant ICC's summary judgement. As wrongly anticipated by the Defendant, Plaintiff Abd-el-Illah Serir will take the burden to proof to the court sufficient evidence for the jury to consider he was discriminated and retaliated.

## II.      RESPONSE TO UNDISPUTED MATERIAL FACTS
## AND PLAINTIFFS' FURTHER STATEMENT OF MATERIAL FACTS

1. ICC posted a search for a full time, tenure-track instructor in its BLIS department in November of 2014. (Aff. of Bugos, ¶ 7.) Serir applied for the position. (Aff. of Bugos, ¶ 8; Serir Dep., p. 22:13 – 19.)

   **Response:**

   Plaintiff admits the statement.

2. No candidate was selected for a tenure-track position in 2014, and the search was terminated because of a low applicant pool. (Aff. of Bugos, ¶ 9; Serir Dep., p. 16:6 – 8.)

   **Response:**

   Plaintiff denies the overall structure of the statement. Plaintiff admits he was notified **only after** he was interviewed for the position that the search was canceled because of low number of applicants and the position will be reposted. *(Serir Dep; p. 16: 3-10)*

3.  However, Serir was asked to interview for an adjunct position. (Aff. of Bugos, ¶ 9.) The
    interview was conducted by Dean Howar and Professor Douglas Peterson ("Peterson").
    (Aff. of Bugos, ¶ 9; Serir Dep. p. 23:3 – 8.)

    **Response:**

    Plaintiff denies the statement; Plaintiff went for full time Tenure Track position interview
    without being asked, Defendant can't produce any document to proof I was asked to
    interview! Plaintiff was interviewed by Dean Julie Howar and Mr. Doug Peterson *(Serir
    Dep; p. 23:3-22)*

4.  Dean Howar was the Dean of the BLIS department from January 2, 2014, through June 23,
    2019. (Aff. of Bugos, ¶ 4.)

    **Response:**

    Plaintiff denies part and admits part of the statement: Dean Howar was the Dean of Business,
    Hospitality and Information Systems in 2014,2015 then the Dean of Business, Legal and
    Information Systems.

5.  Peterson has been a full-time, tenured professor in ICC's BLIS department since August 13,
    1998, and at all times relevant to this Motion was chair of the Computer / Networking
    disciplines within the BLIS department. (Aff. of Bugos, ¶ 5; Aff. of Howar ¶ 13.)

    **Response:**

    Plaintiff neither admits nor denies the statement.

6.  Serir was offered a position as part-time, adjunct faculty for spring term 2015, commencing
    January 12, 2015, which he accepted. (Aff. of Bugos, ¶ 10; Serir Dep. pp. 10:20 – 24; 12:21
    – 13:7.) 1:20-cv-01031-MMM-JEH # 32 Page 5 of 27

    **Response:**

Plaintiff admits the statement.

7.  When he was hired in 2015, Serir made a verbal request to Dean Howar for a private office to meet with students. (Serir Dep., pp. 16:24 – 17:3.) Dean Howar denied this request, and explained there are no private offices available to adjunct faculty. (Aff. of Howar, ¶ 8.) Serir is unable to identify any other adjunct faculty with a private office. [Doc. 20-1, ¶ 15.]

    **<u>Response:</u>**

    Plaintiff denies part of the statement and admits the last part of the statement. "Back in 2015 when Plaintiff started teaching, I asked for an office as required by the "FACULTY HANDBOOK" to be available to assist students during office hours and through appropriately scheduled appointments and to perform my daily prayers; Dean Julie Howar rejected my request period. She did not explain as presumed that there are no offices for adjunct faculty. Plaintiff admits in the second part "8" where he did not know any other adjunct faculty with a private office. *(Serir Dep; pp.16:20 – 17:24) (Aff. Of Serir)*

8.  Serir also contends he told Dean Howar he needed an office to perform his daily prayers. (Serir Dep., p. 17:1 – 2; 85:13 – 15.) Dean Howar denies that Serir told her he needed an office so that he could perform his prayers. (Aff. of Howar, ¶ 9.) When he was denied an office, Serir performed his prayers in an empty classroom or in the library. (Serir Dep. p. 17:19 – 24.) No one at ICC stopped him from performing his prayers. (Serir Dep., p. 18:1 – 3.)

    **<u>Response:</u>**

    Plaintiff denies the word "Contends" or resist. Plaintiff made the request for an office to meet students' office hours as required by the faculty handbook and to use the office for a place to pray. Dean Julie Howar rejected plaintiff's request with no further explanation.

Plaintiff accepted the Dean's decision. Here, the opposing council misinterpreted the deposition transcripts as reported by the court reporter. Example: "THIS" (Serir Dep; p.17:1 – 2; 85:13 – 24; 86:1-24) (Aff. Serir) Plaintiff found refuge in the Library to grade students' assignments and prepare for the courses in general. Also, plaintiff used the library to perform his daily prayers. After being noticed praying in the library and working there for the whole day Plaintiff was told by Cathryne Kaufman, the library personal, that since you are a faculty, she would send an e-mail to the Dean to provide me with an office. After this occurrence, the Dean saw me and said I already told you that I do not have an office. Furthermore, the next day when I went to the library, I was told the time frame allowed to stay in the library had changed from the whole day to only 2 hours. *(Serir Dep; p.85:13-24; 86:1-7) (Amended Rule 26(a)(1) Disclosure: Exhibit P) (Aff. Serir)*

9.  Serir again taught classes as an adjunct in spring term of 2017. (Aff. of Bugos, ¶ 13.) During the spring term, Dean Howar received complaints about Serir from students and faculty stating concerns over the volume of work in the course and Serir's communications with students when addressing student concerns. (Aff. of Howar, ¶ 10.) These student complaints indicated to Dean Howar that Serir did not have a good understanding of community college students. (Aff. of Howar, ¶ 11.)

**<u>Response:</u>**

Plaintiff Abd-el-Illah Serir denies the statement. In spring of 2017 Plaintiff taught two classes CMNET 220 Windows Server 2012 R2 Services and CMNET 230Windows Server 2012 R2 Administration. Students in CMNET 150 "Computer Hardware and Software" as was told by the Dean complained about work load -as alibi - around Fall 2017 and not in

the spring of 2017. Plaintiff had always addressed students concerns and helped them when

they needed support. *(Aff. Serir); (Aff. Brandon Vissering) (Blackboard/audio EXHIBIT C)*

10. In March of 2017, ICC again posted a search for a full time, tenure-track instructor in the

BLIS department. (Aff. of Bugos, ¶ 14.) Serir applied for the position, and was interviewed

by a faculty panel in May of 2017. (Serir Dep., p. 31:1 – 3.) He was given a Skype interview

and then, about a week later, an in-person interview. (Serir Dep., p. 32:3 – 7.)

    **<u>Response:</u>**

    Plaintiff admits the statement.

11. No candidate was selected for the posted tenure-track position. The search was deemed a

failed search due to a low applicant pool, and the requisition was canceled due to low program

enrollment. (Aff. of Bugos, ¶ 15.)

    **<u>Response</u>**:

    Plaintiff admits the statement on the form but denies it on the content. Plaintiff applied and

was interviewed for four hours. Thirty minutes during the Skype interview and three hours

and a half between the face-to-face interview and lecture demonstration. After a month and

half Dean Julie Howar on or around July 2017 called me to come to her office, she then told

me that she can't offer me the position because it's a Failed Search and because of a LOW

NUMBER OF APPLICANTS and repeatedly expressing that this position is a Tenure Track

contract making reference to my age and my personality. In addition if the defendant

proclaimed truly that the position is failed search; why they interviewed the Plaintiff for 4

hours?  *(Serir Dep; p.31,32,33:1-24) (Aff. Serir) (Serir Dep; statement of change; p.32:1-*
*24; 33,341-24) (Aff. Serir)*

12. Serir did not file a complaint with the EEOC following the May 2017 interview and failed search. (Serir Dep., p. 38:11 – 13.)

    **Response:**

    Plaintiff admits the statement.

13. Serir taught three classes as an adjunct in fall term of 2017. (Serir Dep., p. 38:14 – 24.)

    **Response:**

    Plaintiff admits the statement.

14. In the fall of 2017, in response to complaints from students about workload and communication, and in light of Serir's desire to obtain a full-time position, Dean Howar suggested Serir meet with Peterson and Sibrel in order to provide mentorship and assist Serir with developing his skills and building relationships with faculty and students. (Aff. of Howar, ¶¶ 11 – 13; Serir Dep., p.88:13 – 18.)

    **Response:**

    Plaintiff admits the statement on the form but denies it on the content. Plaintiff never heard complaints from the students or faculty. I never been allowed for faculty meetings. *(Serir Dep. P.18:7 – 24)* Instead, Dean Julie called me on the phone and mentioned that students are complaining about the volume of the workload referencing only to the outline assignments that is meant to help the students read the chapter and be prepared for class. *(Aff. Brandon Vissering) (Aff. Serir); The volume of work was just to make a case against me. (Blackboard/Audio EXHIBIT C)*

15. Dean Howar explained to Serir that full-time faculty mentors were not typically provided for adjunct faculty, but that he was being provided mentorship with the objective that in the future his application for a tenure-track position at ICC would be successful. (Aff. of Howar, ¶ 14.)

**Response:**

Plaintiff admits the statement in the form but in reality, it was a conspiracy, they didn't keep their promise despite Plaintiff attended all the meetings. The inflicting and incoherent information in the Vice President Mary Bloodsaw letters confirmed the intent of what the Plaintiff is trying to explain. *(ICC's Interoffice Memorandum dated January 26th,2018 EXHIBIT D) (Aff. Brandon Vissering) (AFF. Serir)*

16. Sibrel was a full-time tenured professor in the BLIS department from August 1, 1999, until May 31, 2019. (Aff. of Bugos, ¶ 6.

   **Response:**

   Plaintiff neither admits nor denies.

17. As part of the mentorship, Peterson came to Serir's classroom to observe him during his classes. (Aff. of Howar, ¶ 15; Serir Dep., p. 91:7 – 18.) Serir met with Peterson and Sibrel about once a month during the fall of 2017 to coach him on class management and other matters. (Serir Dep., pp. 92:13 – 16; 93:21 – 94:3 Aff. of Howar, ¶ 15.) Serir felt he had more experience than Peterson and Sibrel and did not need coaching from them, stating "[s]o what they did afterwards after he came and tried to humiliate me—the whole reason to some and sit down he tell me to coach me. This is the word, to coach me. I never seen—I have more experience…" (Serir Dep., p. 92:4 – 7.) 1:20-cv-01031-MMM-JEH # 32 Page 7 of 27

   **Response:**

   Plaintiff admits the first two parts of the statement and denies Saying "I don't need coaching from them", you missed interpreted the court reporter's transcripts. She did not write down my statements correctly and you acknowledged, I did not receive a copy of the transcript as required by law nor having the adequate time to make the statement of changes.  Despite all

what you tried to say, I was talking about Higher learning commission accreditation and to try to explain that both Mr. Doug Peterson and Ms. Paulette Sibrel do not possess any diploma or bachelor degree in computer networking and they should not teach in the department since 2015 if the Dean conformed to HLC policy. *(Serir Dep; p.98:1-23) (Journal Star EXHIBIT E) (Serir's class observation EXHIBIT F)*

18. In September 2017, Dean Howar received a formal complaint of gender bias from a female student in one of Serir's classes. At the same time, Dr. Awuah received an email complaint from a male student alleging that Serir demonstrated gender bias toward the same female student in his class. (Aff. of Howar, ¶ 18; Aff. of Bugos, ¶ 16.) The complaint was investigated by VP Bloodsaw. (Aff. of Bugos, ¶ 16.)

    **Response:**

    Plaintiff admits the statement on the form but denies it in the content. Defendant did not produce and he is unable to produce the formal complaint document from the female student. Instead, an email from a male student alleging Plaintiff discriminate against a female student was sent to resigned Dr. Emmanuel Awuah. Plaintiff do not believe on the story of the female student because I never heard about this issue for the whole semester while I was teaching. I believe it is a conspiracy against the Plaintiff. *(ICC's Interoffice Memorandum dated January 26th,2018 EXHIBIT D) (Aff. Brandon Vissering) (AFF. Serir)*

19. In November of 2017, ICC again posted a search for a full time, tenure-track instructor in the BLIS department. (Aff. of Bugos, ¶ 17.) Serir again applied for the position, and was interviewed on December 1, 2017. (Serir Dep., p. 39:1 – 9; Aff. of Howar, ¶ 19.)

    **Response:**

    Plaintiff admits the statement.

20. Serir was born in 1963, and was 54 years old at the time he applied for the tenure-track position in November 2017. [Doc. 1, p. 9.]

   **Response:**

   Plaintiff admits the statement.

21. On December 7, 2017, Serir submitted a written complaint to VP Bloodsaw alleging discrimination based on race, ethnicity, and age. (Serir Dep., pp. 62:3 – 18; 63:24 – 64:20; Ex. 1.) Serir met with VP Bloodsaw on December 11, 2017, to discuss his complaint. (Serir Dep., p. 69:17 – 20.)

   **Response:**

   Plaintiff admits part of the statement and denies the other part. Plaintiff sent an opening letter of discrimination to retire vice president of human resources Dr. Marti Bloodsaw based on age and ethnicity and abuse of fellow coworkers. (AFF. Serir) *(Complaint Letter Dec 7th 2017 EXHIBIT G) (Serir Dep; p. 70:1-24)*

22. Also on December 11, 2017, Serir met with Dr. Awuah for a second interview for the full-time tenure track position. (Aff. of Howar, ¶ 19; Serir Dep., pp. 55:16 – 23.)

   **Response:**

   Plaintiff admits part of the statement and denies the other part. In fact, on December 11th, I first met with retire vice president of human resources Dr. Marti Bloodsaw where I explained in details the discriminations I endured since 2014's first interview and then I was instructed to see resigned vice president of education Dr. Emmanuel Awuah for official **forth** interview Tenure Track in computer networking.  I am sorry, everything was a joke and prove again their dishonesty. *(Aff. Serir); (Serir Dep; p.76:6-11; 77:7-24)*

23. Serir was not selected for the position. ICC hired Dr. Robert Deadman ("Deadman") for the position, and he taught for one semester in spring of 2018. (Aff. of Bugos, ¶ 19.) Deadman was 51 years old at the time he was hired. (Aff. of Bugos, ¶ 19.)

**Response:**

Plaintiff admits the statement on the form but denies it in the content. Conflicting information I have on hand *(recommendation of candidates for networking position dated December 5th 2017 (EXHIBIT H).* Deadman was selected, taught one class and then left ICC? Then, Dana Fellows was hired. Why they did not call it failed search because of low number of applicants? More favorable treatment of similarly situated employee. (*EXHIBIT Q _Gmail - Dana Fellows ICC board of trustees); (EXHIBIT I _ Robert Deadman ICC-Board-of-Trustees-Media-Packet-for-Jan-18-2018); (EXHIBIT H_ Recommendation of candidates)*

24. Serir did not meet any of the other candidates for the tenure-track position. (Serir Dep., p. 74:8 – 10.) Serir was not present and did not observe the interviews of any of the other candidates for the tenure-track position. (Aff. of Howar, ¶ 21.)

**Response:**

Plaintiff admits the statement.

25. Dean Howar decided in **December of 2017 not to retain Serir as an adjunct based** on (i) student and faculty stating concerns over the volume of work in the course and Serir's communications with students; (ii) the formal complaint of gender bias against Serir and resulting investigation; (iii) Serir's lack of receptiveness to efforts to provide mentorship; and (iv) two incidents during the fall 2017 term in which Serir was combative and raised his voice to Dean Howar's assistant, Tracey Evans. (Aff. of Howar, ¶ 25 – 26.)

**Response:**

Plaintiff admits the statement on the form and disputes the material facts. The information provided and the whole story about the female gender bias, volume of work, mentorship were tactics from the defendant to humiliate and oppress the Plaintiff *(Aff. Serir)*; Actions are determined by intentions. In regards to the "Response to Plaintiff's First Set of Interrogatories," Defendant was asked:

1.  With respect to plaintiff's termination, state each and every exact reason for the termination name(s) and job title(s) of the person(s) who participated in any way or made the decision to termination plaintiffs [sic]employment and exactly what each individual's role with respect to the decision to terminate plaintiff; and the date on which the decision to terminate the plaintiff was made.

    "*Defendant Response: Plaintiff was not "terminated" Plaintiff had been employed by Defendant as an adjunct professor on a semester by a semester basis, and the Defendant made the determination not to retain the Plaintiff as an adjunct professor after the* **fall of 2018semester***.dean Howar spoke with Dr. Emmanuel Awuah former vice president of academic affairs regarding her decision. Dean Howar decision was based on the following:*

    - Student complaints to dean Howar about Plaintiff, beginning in spring of 2017 and becoming more serious through the fall of **2018**

    - On September 26, 2017, a female student made a formal complaint to dean Howar alleging unequal treatment by Plaintiff on the basis of gender. An investigation concluded that Plaintiff engaged in gender bias with regard to the complaining student.

- Plaintiff was unreceptive to efforts to provide mentor ship in order to develop his skills and to help him build relationships with faculty and students.

- **Two incidents in the fall of 2018** where Plaintiff came to Dean Howard's office and was combative and raised his voice to administrative assistant Tracy Evans caused Dean Howar's concern.

Plaintiff disagrees with all what they said in the above response. Defendant is unable to provide any of the claims they made against the Plaintiff. Plaintiff never violated any policy or had any issue with the students. Defendants contradicts prior sworn testimony. Furthermore, Defendant sent Third 3rd Supplemental response to first set of Interrogatories on April 16th 2021.Plaintiff never asked for it and the completion and close of all the discoveries was set on March 31st 2021. *(Exhibit R_ ICC's 3rd Supplemental Resp to 1st Set of Interrogatories); (Response to Plaintiff's First set of interrogatories EXHIBITJ).* All of the students' evaluations are provided here along *(Aff.Serir) (Aff. Brandon Vissering) (Response to Plaintiff's First set of interrogatories EXHIBITJ), (student Evaluations EXHIBIT K)*

26. On January 22, 2018, VP Bloodsaw provided Serir with written findings of her investigation of Serir's complaint of discrimination. (Aff. of Bugos, ¶ 20.) Bloodsaw found no evidence of harassing or discriminatory behavior against Serir, but did note general reluctance by Serir to accept constructive feedback and misinterpretation of the actions of his students and colleagues. (Aff. of Bugos, Ex A., p. 2.)

   **Response:**

   Plaintiff admits reading two different letters from HR VP Dr. Marti Bloodsaw dated on January 22nd and 26th, 2018 but denies the credibility of the information provided in the

letter. ICC failed to investigate the matter as prescribed in the ICC's policy. They waited 4 months to let the Plaintiff know about the female gender bias that he never heard about. Inconsistent and incoherent information. for instance, she stated: "You applied for Tenure Track computer networking position in 2014, yet another candidate was chosen". "Not True." Plaintiff applied and was hired in 2014 as adjunct.  After one semester and without a notice or a valid cause, my email was deactivated and I was terminated. **In 2016**, I complained to Dr. Rita Ali and after the investigation I was reinstated. None of the information I am providing is recorded or listed in HR vice president's letter. That proves that everything is a fabrication. *(Aff. Serir), (Dr. Marti Bloodsaw findings written letter January 22nd 2018; EXHIBIT D) (Interoffice Memorandum January 26th, 2018 EXHIBIT D)*

27. On January 26, 2018, VP Bloodsaw sent Serir a memorandum detailing the results of her investigation into the complaint of gender bias toward a female student made in September of 2017. (Aff. of Bugos, ¶ 21.) VP Bloodsaw found that "behaviors of bias did occur that interfered with this student being comfortable in class," but found no other evidence or instances of bias. (Aff. of Bugos, Ex. B, p. 2.)

**Response:**

Plaintiff admits reading the Interoffice Memorandum letter from HR VP Dr. Marti Bloodsaw dated January 26th, 2018 provided by, for the first time, the EEOC and contest the content. A biased and unfair investigation was conducted transgressing their own policy. *(Aff. Serir); (Aff. Brandon Vissering); (Interoffice Memorandum January 26th, 2018 EXHIBIT D)*

28. Serir has not taught any classes at ICC since December 2017, and was formally removed from the list of active adjunct faculty on January 14, 2019. (Aff. of Bugos, ¶ 22.)

**Response:**

Plaintiff admits he has not taught any classes since December 11th 2017. So how come does my name get removed from the active adjunct faculty list 2 years after I stopped teaching. And it is stated in number 25 that "Dean Howar decided in December of 2017 not to retain Serir as an adjunct". Contradiction of sworn testimonies!!!

29. Serir filed a Charge of Discrimination with the EEOC on July 31, 2018, alleging that, on December 1, 2017, ICC failed to promote him to a full-time position for which he applied and is qualified because of discrimination based on age and religion, and that ICC has failed to assign him to teach any classes after he filed a complaint with ICC on December 7,

   1:20-cv-01031-MMM-JEH # 32 Page 9 of 27

   10

   2017. [Doc. 1, p. 9; Doc. 20-1, p. 1.] The EEOC Charge did not include national origin as a basis for discrimination. [Doc. 20-1, ¶ 2.]

   **Response:**

   Plaintiff admits he filed a charge with EEOC on July 31st, 2018 based on age, religion and in retaliation for engaging in protected activity.

30. There is no direct evidence that Serir was not selected for a full-time, tenure track faculty position because of his age. [Doc. 22, ¶¶ 7 – 8; Doc. 27, p. 5.] The only evidence Serir can point to is (a) a statement allegedly made by Dean Howar that he was not selected because it was a "tenure-track" position, and (b) when Serir asked the faculty panel about their experience at ICC during his May 25, 2017, interview, Peterson allegedly responded "do not expect much about your retirement," both of which Serir interpreted as references to his age. [Doc. 22, ¶ 12.]

   **Response:**

Plaintiff denies the statement. There were many occurrences that determined that the plaintiff was not selected for tenure track computer networking because of his age, protected by the law and they established a matter of fact in both the form and the content and are functions of the judge and the jury. The first statement when Dean Julie Howar made a reference to the plaintiff's age given the amount of time it would take to obtain tenure track combined with the plaintiff age. The same statement was repeated in the three interviews December 2014, May 2017 and December 2017 plaintiff applied and was interviewed while ICC continued to look for applicants even though plaintiff already had two bachelor degrees and a master degree accredited by Higher Learning Commission.

The second statement is in regard to Mr. Doug Peterson's sarcastic reference to plaintiff retirement when Plaintiff asked the faculty panel about their experience working with Illinois Central College. He said: "DO NOT EXPECT MUCH ABOUT YOUR RETIREMENT" He added when I met him later on at the Teaching and Learning Center (TLC), I was not selected for the position because of my "PERSONALITY" referencing as well to my age and me as a whole. *(Aff. Serir); (1:20-cv-01031-MMM-JEH # 27 Page 5,6 of 8)*

31. There is no direct evidence that Serir was not selected for a full-time, tenure track faculty position because of his religion. [Doc. 22, ¶¶ 9 – 10; Doc. 27, p. 6.]

**Response:**

Plaintiff denies the statement. Plaintiff disagrees that the Defendant can't stipulate and anticipate that there is no direct evidence that Serir was not selected for a full-time tenure track faculty position because of Plaintiff's religion. The non-verbal statement of a refusal to allow an office for prayers is a fact which you can reasonably infer (Dean denial of an Office) because of Plaintiff's religion. On the other hand, there was a direct incident with Cathryne Kaufman, the

director of the library. She had noticed me praying in one of the glass cubicles in the library. She came up to me and said that since you are a faculty member you should have an office and I will e-mail the Dean to provide you with an office. This is a legitimate inference that I was denied to pray in the library and afterwards I started to pray in my classroom. *(Aff. Serir) (Amended Rule 26(a)(1) Disclosure: Exhibit P)*

32. There is no direct evidence that ICC failed to accommodate Serir's religion by denying him a place to perform his daily prayers. The sole basis for his allegation that ICC failed to accommodate his religion is based on Dean Howar's refusal to provide him with office space. [Doc. 1; ¶ 12; Doc. 22, ¶ 10.] Serir admits that he was able to perform his prayers in the library or an empty classroom, and that no one at ICC prevented him from doing so.

Q. Were you able to do your prayers in your classroom?

A. Yes. I do – not during my class but after my class. I do it – I know it try to – how do you say.

Q. In an empty classroom?

A. In an empty classroom, yes, yes.

Q. Did anyone come into the classroom and tell you to stop praying?

A. No.

*(Serir Dep., pp. 17:19 – 18:3.)*

1:20-cv-01031-MMM-JEH # 32 Page 10 of 27

**<u>Response:</u>**

Plaintiff denies the statement. Defendant failed to accommodate Plaintiff's religion by providing him an office and an undisturbed place to perform his prayers. Defendant relied extensively on the deposition transcript and miss-interpreted the plaintiff's intent and ignored all the genuine

inferences made during the discovery process that is the basis of a judge and the jury to resolve. The first inference is in regard to the denial of an office as required by the ICC policy and the faculty handbook. The second inference is related to the library where the Plaintiff was content by using the library to prepare for his courses, grade student assignments and projects and used the cubicle provided as a place to pray until the director of the library Catheryne Kaufman came and restricted the use of the library to two hours only. Plaintiff started to perform his prayers uncomfortably in his own classroom. The disruption of providing the plaintiff a safe and calm place to perform his prayers is too great to constitute in itself an undue hardship that is a matter of the judge and the jury to decide. *(Aff. Serir)*

33. There is no direct evidence that Serir was not selected for a full-time, tenure track faculty position because of his national origin. [Doc. 22, ¶¶ 11 – 12; Doc. 27, pp. 6 – 7.] Though Serir denied this in response to Defendant's Requests to Admit, the only evidence he could point to in support of his denial was an alleged statement by Peterson that he was not selected for the full-time position following his May 2017 interview because of his "personality," which he interprets to be a reference to his national origin. [Doc. 22, ¶¶ 11 – 12.] The comment about his personality was made after the May 2017 interview. (Serir Dep., pp. 80:17 – 80:2.)

**Response:**

Plaintiff denies the statement. In a letter sent to retire vice president Dr. Marti Bloodsaw on December 7th 2017, Plaintiff explicitly titled the letter "Age and Ethnicity Discrimination and Abuse" in a statement acknowledged by Mr. Doug Peterson. Plaintiff was not hired for tenure track computer networking because of his "Personality" referring to Plaintiff's social traits as an ethnic minority belonging to Arab Muslim minority. If Plaintiff was treated favorably like Ms. Paulette Sibrel, Mr. Doug Peterson, Mr. Dana Fellows, Mr. Robert Deadman, Mr. Kevin Wells

and more and if he had a different ethnicity and everything else remained the same…Would of he kept his job? Plaintiff was treated unfavorably because of his ethnicity and Arab Muslim Accent that relates and correlates with his national origin. *(Aff. Serir); (1:20-cv-01031-MMM-JEH # 27 Page 1 of 8); (Complaint Letter to HR Dec. 7th, 2017 EXHIBIT L)*

34. When pressed to identify discriminatory actions of ICC during his December 1, 2017, interview, Serir provided only the following:

a. The faculty panel did not follow "protocol" for the interview and it was "chaos", and he "felt very discriminated." *(Serir Dep., pp. 43:14 – 15; 45:2 – 3.)* "I was not having the treatment I deserve." *(Serir Dep., p. 46:1 – 2.)*

b. During his December 1, 2017, interview, the faculty panel was laughing while he was talking, "like sort of code. They were all staring at me." *(Serir Dep., p. 50:21 23.)* He believed they were laughing at his accent because "[w]hen I was talking, they told me, oh, please repeat. And they were laughing.

**Response:**

Plaintiff also admits in a statement provided by the faculty panel in a letter titled "Recommendation of candidates for networking position" addressed to the retire vice president Dr. Emmanuel Awuah, the faculty panel were not neutral and expressed prejudice toward the plaintiff of being "female gender bias" and not to male gender referencing to the plaintiff's national origin ethnic Arab Muslim. *(Aff.Serir); (recommendation of candidates for networking position dated December 5th 2017 EXHIBIT H); (Student Complaint email of female gender bias; EXHIBIT M).*

24

35. There is no direct evidence that Serir was not selected for a full-time, tenure track faculty position in retaliation for making a complaint of discrimination to ICC. [Doc. 22, ¶¶ 13 – 14; Doc. 27, pp. 7 – 8.]

**Response:**

Plaintiff denies the statement. As a matter of fact, there are genuine documents that demonstrate the intent of the Defendant in retaliating for making a complaint of discrimination. Plaintiff's letter of complaint to the human resources was on December 7th 2017 and my last day of work at ICC was on December 11th 2017. Furthermore, plaintiff sent a certified letter to Ms. Michelle Bugos associate HR vice president, vice president of education Dr. Emmanuel Awuah, former vice president of Diversity and International Student Dr. Rita Ali, ICC president Sheila. Quirk-baily hoping for remedy. Defendant lied about reasons for action taken and changed the story overtime. *(Aff. Serir) ;(Complaint Letter Dec 7th 2017 EXHIIT L); (hope for remedy email EXHIBIT N); (ICC's Interoffice Memorandum dated January 26th,2018 EXHIBIT D)*. ICC failed to take reasonable care to prevent and promptly correct any adverse.

36. Serir is unable to identify any other adjunct faculty at ICC that was treated more favorably than he was. (Serir Dep., p. 88:10 – 12.) Serir claims only that other faculty were provided an office and he was not. But the only faculty he identified as having an office was Peterson, who is a full-time, tenured professor. *(Serir Dep., pp. 82:18 – 83:9.)*

**Response:**

Plaintiff admits the statement on the form but denies it in the content *(Serir Dep; p.82:21-24)*

37. Serir has presented no direct evidence of discriminatory motive by ICC, Dean Howar, Sibrel, or Peterson. To the contrary, Serir testified "I am 100 percent convinced that all their behavior towards me is to preserve their own interest and to prove they have no faculty to teach like –

that have the credential. I have the HLC [Higher Learning Commission] credential. They don't have." *(Serir Dep., p. 110:18 – 22.)*

**<u>Response:</u>**

Plaintiff denies the statement. In contrary, Plaintiff has provided enough direct and indirect evidence to proof that employment discrimination happened and enough suggested comments and conducts that could be circumstantial evidence of discrimination.

### III. Counter Arguments

In accordance with the Federal Rule of Civil Procedure 56 (a)(b), Plaintiff, Abd-el-Illah Serir, has shown enough direct and indirect evidence, suggested comments from ICC's officers and unduly conducts from Dean Julie Howar, Ms. Paulette Sibrel and Mr. Doug Peterson that exhibited concise and circumstantial evidence of discrimination. Plaintiff showed sufficient evidence and inferences that is a matter of the judge and the jury. Plaintiff has demonstrated all the requirements for prima facie case:

- Member of protected group American Arab Suni Muslim
- Plaintiff was meeting applicable standards and provided enough evidence and suggested comments that could be incidental evidence of discrimination.
- Plaintiff was subjected to adverse actions.

Defendant has relied extensively on the deposition and Michelle Bugos affidavit. In regards to the deposition the Defendant and the court reporter failed to provide the plaintiff with a copy of the transcript and was not invited to make the statement of change as required by Rule 30 (c) (e) (1) (f) The Plaintiff was able to read the deposition until following the Defendant's submission of the summary judgement. After "meet and confer" Defendant exercised no objection to attach what the

26

plaintiff was able to make as errata to the transcript because the court reporter was having hard time recording Plaintiff's testimony and she distorted mostly everything in the transcripts.

Concerning Mrs. Michelle Bugos affidavit, and based on Federal Rule of Civil Procedure 56 (c) (4), an Affidavit must be performed on "Personal Knowledge". Mrs. Michelle Bugos assume her job at ICC on August 13th 2018. Plaintiff's last day was December 11th 2017. Mrs. Bugos did not witness nor was in contact with the Plaintiff during the course of this discrimination issue. Her testimony contradicts sworn testimony provided in response to undisputed facts.

As stated during the course of this discrimination claim, Plaintiff Serir has exhausted his administrative remedy and successfully filed a timely administrative charge with EEOC *(Charge EXHIBIT O)* and with this court. Thus, this honorable court has all the mechanisms to view all the records as a whole and disregards the Defendant belief that the jury is not necessary.

**a.  Serir's claim that ICC failed to promote him to a full-time position in December 2014 and May 2017 and his claim for national origin discrimination are barred**

As stated in the brief, plaintiff did not file a discrimination in 2014 because he was hoping to solve the matter within ICC; Plaintiff contacted Dr. Rita Ali and a sort of mutuel resolution was achieved and plaintiff was reinstated after being terminated without a valid cause *(Aff. Serir); (E-mail complaint to Dr. Rita Ali EXHIBIT B)*. In May 2017, Plaintiff was told you were not selected to tenure track position because is a "failed search" and "low number of applicants" and the position will be reposted despite the position remained open and ICC continued to look for applicants with plaintiff's qualification. In May 2017, Plaintiff did not file a discrimination claim because he was teaching three classes at that time and he was told that the position will be reposted because of a low number of applicants. Then, when the issue of discrimination, humiliation and oppression intensified, plaintiff was forced to complain to the HR. This latter failed again to take reasonable care to prevent and promptly correct any adverse. Despite the conflicting measures and untrue

information's provided in retired vice president of HR Dr. Marti Bloodsaw's letter dated January 22nd 2018 and the interoffice memorandum dated January 26th 2018, plaintiff did not reasonably fail to take advantage of any preventive or corrective opportunities. (Dr. Marti Bloodsaw findings written letter January 22nd 2018; EXHIBIT D) (Interoffice Memorandum January 26th, 2018 EXHIBIT D)

Plaintiff filed a charge with EEOC and received a notice of suit rights *(Aff.Serir); (EEOC Notice of Suit Rights EXHIBIT S)*

Plaintiff do not argue he did not check the box for national origin but the claim as a whole reference and relate to the allegations of the EEOC charge. As an American Arab Muslim suni ethnic group there is a positive correlation between ethnicity, religion Muslim and national origin discrimination.

Decision was made to terminate plaintiff because of a female gender prejudice and lack of knowledge about Muslims practices and accommodation. Plaintiff Serir would he kept his job if he has a different national of origin or ethnicity and everything else remain the same?

**b. Serir's Age Discrimination Claim Lacks Sufficient Evidentiary Support**

Plaintiff explicitly prove prima facie case of age discrimination. Plaintiff showed he was terminated (EXHIBIT J) because Dean Julie Howar repeatedly expressed the tone that I was not selected because "It is a Tenure Track" given the amount of time it would take to obtain a tenure the same thing when Mr. Doug Peterson in a sarcastic tone told the plaintiff "DO NOT EXPECT TOO MUCH TOWARD YOUR RETIREMENT" (1:20-cv-01031-MMM-JEH # 27 Page 4 of 8). Moreover, the position remained open and ICC continued to look for applicants with plaintiff's qualification. (Serir CV: EXHIBIT T) In addition Plaintiff is a member of protected group. *(Green v. McDonnell Douglas Corporation, 463 F. 2d 337 - Court of Appeals, 8th Circuit 1972)*

Defendant failed to provide or articulate consistent nondiscriminatory documents for its actions. In contrast, Plaintiff demonstrated through the documents that were provided by the Defendant were fabricated, incoherent and lots of contradictions in ICC proffered legitimate reasons for their intent *(Sampson v. SCHOOL DISTRICT OF LANCASTER, Dist. Court, ED Pennsylvania 2009.)* In addition, the Defendant acknowledged in numerous occasions Plaintiff was not selected because it's a 'Tenure Track" due to "Failed Search" and "Low Number of Applicants" despite plaintiff's qualifications. In itself constitute an acknowledgement of discriminatory intent by the Defendant. Ultimately can be perceived as direct indication of discrimination.

### c.    Serir's religious discrimination claim lacks sufficient evidentiary support

Defendant relied heavily on the deposition and associate vice president Mrs. Michelle Bugos's affidavit despite plaintiff did not receive a copy of the transcript nor was invited to make the statement of change as required by Rule 30 (c) (e) (1) (f). Plaintiff did not waive the signature. Moreover, an affidavit must be performed on "Personal Knowledge" Federal Rule of Civil Procedure 56 (c) (4). Mrs. Michelle Bogus was hired on August 13th 2018 and she never been in contact with the Plaintiff. Moreover, she contradicts prior sworn testimony.

In numerous occasions during this brief, Plaintiff demonstrated he was not selected for tenure track computer networking because:

- ICC failed to accommodate a safe and undisturbed place to perform his five daily prayers.

-  Plaintiff was denied an office to meet his student's office hours requirement policy and to perform his prayers.

- Plaintiff was using the library almost for the whole day and later after being seen praying in a cubicle made of transparent glass, he was instructed to use it only for two hours.

Furthermore, Plaintiff was not selected for tenure track because of religious Muslim prejudice.  In (EXHIBIT H_ Recommendation of candidates) was stated: "Two of the female faculty noted that when he referred to the men in the room, he called them Professor Doug and Professor kevin. But only one time did he refer to the women in the room as Professor. He called them by their first name only. Perhaps a small error but very noticeable to them given the fact that the most recent student complains dealt with gender" This is what the faculty panel reported, instead of being fair and neutral they said: "They have very strong opinion about Mr. Serir. They are almost all AWARE of the student complaints about him." This is a direct and a material fact of prejudice and ethnic Muslim discrimination *(Serir Dep; 49:1-14)*. Plaintiff has identified many statements direct and indirect that Plaintiff's religion Muslim was the basis of ICC's decision not to promote the plaintiff for tenure track.

Defendant is lacking consistency and direct evidences and all the information's provided are incoherent and pure hearsays.

- Plaintiff has performed very well during his teaching at ICC. *(EXHIBIT F_ Class Observation) ;( EXHIBIT K _ Student Evaluations)*
- Plaintiff did not violate college' policy and have no write ups.

In the "Response to Plaintiff's First set of Interrogatories" When Plaintiff's asked the defendant:

3. List and described each and every performance evaluation and /or disciplinary action received by plaintiff during employment, identifying each individual involved and listing the exact date of receipt.

   **Response**:

   All performance evaluations are located in Plaintiff's personal file which will be produced in Response to Plaintiff's Request for Production.

Defendant was unable to identify any write ups or bad performance and contend by providing rumors and hearsays.

### d. Serir's retaliation claim lacks sufficient evidentiary support

Plaintiff's already and in accordance with McDonnel Framework demonstrated through direct and indirect evidence that retaliation has occurred, the conflicting documents provided in Exhibits proof that retaliation has occurred.

Plaintiff was terminated after making a complaint of employment discrimination to the HR on December 7th 2017. The fourth interview conducted by resigned vice president for race discrimination on December 11th 2017 is an indication of a dishonest intent and the promise to assign classes to Plaintiff in January 2018 was a hoax. Furthermore, Defendant contradict prior sworn testimony depicted in (EXHIBIT J _ Response to Plaintiff's 1st Set of Interrogatories) and (Exhibit R_ ICC's 3rd Supplemental Resp to 1st Set of Interrogatories) and (Associate vice president Michelle Bogus Affidavit.). The fact hiring Mr. Robert Deadman for just 8 weeks and Dana Fellows months later and you did not call it "Failed Search" because of "Low Number of applicants" given preferential treatment over the Plaintiff. (EXHIBIT H_ Recommendation of candidates); (EXHIBIT I _ Robert Deadman ICC-Board-of-Trustees-Media-Packet-for-Jan-18-2018); (EXHIBIT Q _Gmail - Dana Fellows ICC board of trustees). Plaintiff is not comparing himself to Mr. Doug Peterson nor Ms. Paulette Sibrel despite both they don't have the accreditation to teach computer networking; They humiliated and oppressed the plaintiff in many occasions this is why I am looking for justice and employment equity in the work place as President client said: "This country is a country of law and immigrants".

Plaintiff proved enough and through tangible documentation that what the Defendant mentioned in bold is true and the whole truth:

**YES**, Dean Howar "requested for the position to be postponed many times since 2015 FALSELY claiming to give opportunity to other candidates to apply for the position; at the same time doing her best to not hire me nor promote me for which I applied and am qualified for." [Doc. 22, ¶¶ 8, 11, 12.]

**YES**, there were many make up statements and documents "OFFICE MEMORANDUM", "RECOMMENDATION OF CANDIDATES FOR COMPUTER NETWORKING POSITION" from both the administration and the faculty panel committee FALSELY claiming I was not selected because of the single female gender bias problem and behavioral classroom issue." [Doc. 22, ¶ 13.]

**Yes**, "I am convinced the ICC administration deviated from the real issue of employment discrimination by fabricating the untruthful statements alleging, I am unfair to one female student and accusing me of being a gender bias." [Doc. 22, ¶ 14.]

### IV.   Conclusion

Pro Se Litigant, Abd-el-Illah Serir, and for the aforementioned reasons, Plaintiff respectively urges the honorable court to grant Plaintiff's motion for summary judgment

Respectfully submitted

By: Pro Se Litigant: Abd-el-Illah Serir

Signed: Plaintiff's Abd-el-Illah Serir

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for the
Defendant e-mail at this address:

katherine.swise@mhtlaw.com                              On date: 06/21/2021