UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ABD-EL-ILLAH SERIR, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 20-cv-1031 |
| ) | |
| ILLINOIS CENTRAL COLLEGE, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is now before the Court on Defendant Illinois Central College's ("Defendant") Motion for Summary Judgment. (D. 32). For the reasons stated below, Defendant's Motion is GRANTED.

## BACKGROUND

Abd-el-Illah Serir ("Plaintiff") practices the Muslim religion and was fifty-four years old during the alleged discriminatory actions. (D. 1). Plaintiff was employed by the Defendant as a part-time, adjunct faculty member in the Business, Legal, and Information Services ("BLIS") Department in the spring term of 2015, the fall term of 2017, and the spring term of 2017. (D. 32-2, p. 1). Adjunct faculty are employed on a semester-by-semester, as needed basis, which is determined by student enrollment and availability of classes. *Id.*

Plaintiff initially applied for a full-time, tenure-track instructor position in the BLIS Department in December 2014. *Id.* However, Defendant cancelled the search for a candidate due to a low number of applicants and offered Plaintiff an adjunct faculty position for the 2015 spring term, which he accepted. *Id.* When Plaintiff started in January 2015, he asked the Dean of the BLIS

1

Department ("Dean") for a private office to meet with students and conduct his daily prayers[1]. (D. 32-1, pp. 6, 23; D. 32-3, p. 3). Defendant denied this request on the grounds that adjunct faculty were not given their own offices. *Id.* Plaintiff testified that he was able to complete his daily prayers in his classroom or the library, and that Defendant did not try to prevent him from performing his daily prayers. (D. 32-1, pp. 17-18). Plaintiff was not aware of any other adjunct faculty who were treated more favorably than him. *Id.* at p. 6.

Plaintiff was rehired as an adjunct faculty member in the BLIS Department in 2017. In March 2017, Defendant again posted a full-time, tenure-track position in its BLIS Department, and Plaintiff applied and was interviewed in May 2017. (D. 32-2, p. 3). However, Defendant again cancelled the search due to the low number of applicants and low student enrollment. *Id.* Plaintiff continued to be employed as an adjunct professor.

During the spring 2017 term, Defendant began receiving complaints about Plaintiff regarding the volume or work assigned to students and Plaintiff's lack of responsiveness to students' concerns. (D. 32-3, p. 2). In response, Defendant provided Plaintiff with two mentors, who were tenured professors in the BLIS Department, who would observe Plaintiff's classes and provide monthly feedback. (D. 32-3, pp. 2-3; D. 32-1, p. 88). However, Plaintiff felt having other professors observe him in class was an attempt to humiliate him because he felt as if he was a more experienced instructor. (D. 32-1, p. 92).

During the fall 2017 term, Defendant continued to receive complaints from students about the amount of work Plaintiff assigned and his lack of responsiveness to students' concerns. *Id.* In September 2017, a female student also made a formal complaint that Plaintiff demonstrated gender

---

[1] The Dean of Defendant's BLIS Department denies Plaintiff ever indicated that he needed an office to perform his prayers or otherwise requested a place to conduct prayers. (D. 32-3, p. 3).

bias toward her in class. (D. 32-2, p. 7) (D. 36-12). Defendant investigated the complaint and found evidence of gender-bias. (D. 32-2, p. 7). In January 2018, after grades had been turned in, Defendant notified Plaintiff of the allegations and investigation and recommended that he participate in a program focused on classroom techniques to avoid gender bias, which could be facilitated through the school. *Id.* at pp. 4, 8.

In November 2017, Defendant again posted a full-time, tenure-track position for its BLIS Department, and Plaintiff applied. *Id.* at p. 3. Plaintiff interviewed with a faculty panel on December 1, 2017 and had a second interview with Defendant's Vice President of Academic Affairs ("VPAA") on December 11, 2017. *Id.* On December 5, 2017, the Dean submitted a memorandum to the VPAA regarding the faculty panel's recommendations for the position, which ranked Plaintiff third out of the three potential candidates. *Id.* at pp. 7-9. Before his second interview, Plaintiff concluded that he had not been selected for the position based solely on the Dean's demeanor when he saw her following his interview. (D. 32-1, pp. 75-78). As a result, on December 7, 2017, Plaintiff submitted a complaint to Defendant's Human Resources Department alleging harassment and discrimination based on his age and ethnicity. (D. 32-2, p. 3) (D. 36-6). In accordance with Defendant's policy, an investigation was conducted, and no evidence of harassment or discriminatory behavior was discovered. (D. 32-2, pp. 5-6).

Plaintiff ultimately was not selected for the full-time position. (D. 32-3, p. 4). Defendant discontinued Plaintiff's employment following the fall 2017 term due to ongoing student complaints regarding workload and Plaintiff's lack of responsiveness to student's concerns; the complaint regarding gender bias against Plaintiff; Plaintiff's lack of receptiveness to the mentorship program; and two occasions when Plaintiff raised his voice to the Dean's assistant in the fall of 2017. *Id.* at p. 5; (D. 36-17).

**PROCEDURAL HISTORY**

On July 31, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that on December 1, 2017, Defendant's failure to hire him for the full-time, tenure-track position in the BLIS Department was based on his age and religion and in retaliation for the complaint he filed with Defendant on December 7, 2017. (D. 1). The EEOC charge did not include national origin as a basis for discrimination. *Id.* at p. 8. The EEOC was "unable to conclude that the information obtained establishes a violation of the statutes" and denied his claim. *Id.*

On January 22, 2020, Plaintiff filed this Complaint for employment discrimination pursuant to 29 U.S.C. § 621 and Title VII, 42 U.S.C. § 2000e, alleging the Defendant intentionally discriminated against him based on his age, religion, and national origin by: (1) failing to hire him; (2) terminating his employment; (3) failing to promote him; (4) failing to reasonably accommodate his religion; (5) retaliating against him because he asserted his legally protected rights; and (6) coercing, intimidating, threatening, or interfering with the exercise or enjoyment of his rights. *Id.* at p. 3.

On April 30, 2021, Defendant filed its Motion for Summary Judgment. (D. 32). On June 21, 2021, Plaintiff filed a Response to Defendant's Motion for Summary Judgment. (D. 36). On July 5, 2021, Defendant filed a Reply. (D. 39). The matter is now fully briefed and ripe for ruling. This Order follows.

**LEGAL STANDARD**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or

affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The moving party may meet its burden by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 322. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322. The court must then determine whether there is a need for trial, in other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249.

## DISCUSSION

### A. Statute of Limitations.

Prior to filing a Title VII claim for discrimination in federal court, a plaintiff must first exhaust administrative remedies by filing charges with the EEOC and receiving a "right to sue" letter. *Chaidez v. Ford Motor Co.,* 937 F.3d 998, 1004 (7th Cir. 2019). Charges must be filed with the EEOC within 300 days of the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1). Failure to file a timely charge precludes a subsequent lawsuit under Title VII. *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 860 (7th Cir. 2005). Discrete discriminatory employment actions, such as termination, failure to promote, or refusal to hire, are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or relate to other acts. *Id.*

Therefore, "each discriminatory act "starts a new clock for filing charges alleging that act," and charges not filed within 300 days of the act in question are not actionable." *Id.* (citing *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 113 (2002)).

Similarly, to sue under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), an employee must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d)(1)(B); *Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 637 (7th Cir. 2004). The date of the unlawful practice "is when a 'final, ultimate, [and] non-tentative' decision was made for which the employee receives unequivocal notice." *Draper v. Martin,* 664 F.3d 1110, 1113 (7th Cir. 2011) (quoting *Flannery,* 354 F.3d at 637). Failure to timely file a charge with the EEOC will ordinarily bar an ADEA claim. *Chakonas v. City of Chicago,* 42 F.3d 1132, 1135 (7th Cir. 1994).

Here, Plaintiff first filed an EEOC charge alleging discrimination against Defendant on July 31, 2018. (D. 1, p. 9). For the EEOC charge to be timely, the alleged discriminatory action must have occurred on or after October 4, 2017. As a result, to the extent Plaintiff's Complaint is based on Defendant's refusal to hire him for a full-time position in December 2014 or May 2017 due to his age or being a member of a "protected class," these claims are time barred. Plaintiff has neither alleged equitable tolling should apply nor provided any facts that would justify this rare exception. *See Beamon,* 411 F.3d at 860.

Even if these claims were not time barred, Plaintiff cannot state a claim for employment discrimination based on Defendant's failure to hire him in December 2014 and May 2017, because both searches were cancelled, and no one was hired for the position. This is fatal to Plaintiff's claim as he cannot establish that another similarly situated individual who was not part of his protected class was treated more favorably than him. *See Burks v. Wisconsin Dep't of*

6

*Transportation,* 464 F.3d 744, 750-51 (7th Cir. 2006); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Similarly, any claim Plaintiff has regarding Defendant's failure to provide him with a private office to conduct prayer fails, because he himself testified that he could not identify any other adjunct professor who was treated more favorably than him. (D. 32-1, p. 88).

### B. Plaintiff's claim for discrimination based on national origin is barred.

A plaintiff "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Chaidez,* 937 F.3d at 1004. A Title VII plaintiff cannot allege claims in a lawsuit that are not included in his EEOC charge because the purpose of the EEOC charge is to notify the employer of the nature of the charges against it, and to provide the EEOC with a basis for undertaking an investigation of the allegations as well as to conciliate between the parties. *Vela v. Village of Sauk Village,* 218 F.3d 661, 664 (7th Cir. 2000); *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994).

An exception to this rule is a plaintiff may allege facts in his complaint different from those in his EEOC charge only when they are "like or reasonably related" to the allegations contained in his EEOC charge. *Cheek,* 31 F.3d at 500. The claims in a federal complaint and the claims in an EEOC charge are "like or reasonably related" if the factual relationship between them, at a minimum, "describe the same conduct" and "implicate the same individuals." *Id*

Here, it is undisputed that Plaintiff's EEOC charge did not include a claim for discrimination based on national origin. For his national origin claim to survive, it must be "like or reasonably related" to the allegations contained in the EEOC charge and must "be reasonable expected to grow out of an EEOC investigation of the allegations in the charge." *See id.* On the

EEOC charge form, Plaintiff only checked the boxes for discrimination based on religion, age, and retaliation and supported his claims with the following statement:

> I was hired by Respondent in or around December 2014. My current position is part-time Computer Networking Adjunct Faculty. Respondent has failed to promote me into a full-time position for which I applied and am qualified. On or about December 7, 2017, I complained to Respondent. Therefore, Respondent has failed to assign me to teach any classes.
>
> I believe I have been discriminated against me because of my age, 54 (YOB: 1963), and in retaliation for engaging in a protected activity, in violation of the Age Discrimination in Employment Act of 1967, as amended.
>
> I believe I have been discriminated against because of my religion, Muslim, and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(D. 1, p. 9). Not only did Plaintiff not check the box for national origin discrimination, he also did not identify national origin in his charge's narrative section. *Id.* Like Plaintiff's EEOC charge, his Complaint is devoid of any factual allegations of discrimination based on his national origin. (D. 1). In fact, the Complaint fails to even identify what Plaintiff's national origin is. *Id.* As a result, Plaintiff's claim for discrimination based on national origin is barred.

**C. Alleged disparate treatment based on religion following Plaintiff's December 2017 interview for the full-time, tenure-track position.**

To establish a *prima facie* case of discrimination, a plaintiff must offer evidence: "(1) he is a member of a protected class; (2) his job performance met [the employer's] legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Burks v. Wisconsin Dep't of Transportation,* 464 F.3d 744, 750-51 (7th Cir. 2006); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The failure to satisfy any one of these elements is fatal to Plaintiff's claim. *See Gates v. Caterpillar, Inc.,* 513 F.3d 680, 690 (7th Cir. 2008) (affirming district court's dismissal of discrimination claim because the plaintiff was unable to

8

meet either the second or fourth prongs of the *McDonnell Douglas* test).

In his Response to Defendant's Motion for Summary Judgment, Plaintiff makes no citation to the legal framework applicable to addressing his claims and cites none of the numerous cases from the Seventh Circuit addressing disparate treatment based on religion. In fact, Plaintiff's Response makes a general argument that he was not selected for the tenure track because of Defendant's religious prejudice because he was not given a private office and the facility interview panel inappropriately taking into consideration the allegation of gender-bias by a student. (D. 36, pp. 30-31). This position not only highlights prior issues, unrelated to religion, that Defendant had with the Plaintiff, but also further demonstrates his lack of accountability and ability to accept constructive criticism.

Plaintiff's Response also makes no attempt to address the essential elements of a *prima facie* case, or the arguments and authority presented by Defendant's summary judgment motion. This kind of perfunctory and underdeveloped legal argument is utterly insufficient to survive a motion for summary judgment, and it is well settled that responses of this type result in a waiver of all arguments. *Jorden v. Walmart Stores, Inc.,* 322 F.Supp.2d 1172, 1177 (2004); *see also, Finance Investment Co. v. Geberit AG,* 165 F.3d 526, 528-529 (7th Cir. 1998) (finding a perfunctory and underdeveloped argument to be waived).

Even assuming arguendo that Plaintiff did not waive all arguments, his disparate treatment claim must be denied, as he fails to demonstrate that he was meeting Defendant's reasonable expectations and that similarly situated employees outside his protected class were treated more favorably. Defendant has also presented evidence of legitimate, non-discriminatory reasons for not hiring Plaintiff for the full-time faculty position or retaining him as an adjunct professor.

1. **Plaintiff fails to demonstrate meeting legitimate expectations.**

Regarding Plaintiff's job performance, despite some evidence demonstrating positive feedback, Plaintiff fails to demonstrate that he was meeting his employer's legitimate expectations at the time of termination. To his detriment, the record contains ample undisputed evidence of complaints by both students and faculty. Despite Defendant's attempt to help Plaintiff address these issues, he was unreceptive to his mentors and apparently continued to do exactly what he was asked to correct, as the students' complaints regarding the workload and his lack of responsiveness to their concerns continued into the next semester. Additionally, in the fall of 2017, Defendant found evidence supporting a gender-bias complaint made by one of Plaintiff's female students and identified two occasions when Plaintiff became combative and raised his voice to the Dean's administrative assistant. (D. 32-3). Plaintiff simply cannot survive summary judgment on this record.

### 2. Plaintiff fails to identify similarly situated employees.

Even assuming Plaintiff was meeting Defendant's legitimate expectations at the time of his termination, he fails to demonstrate there were similarly situated employees outside of his protected class who were treated more favorably. To defeat summary judgment, Plaintiff must identify comparators who "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates*, 513 F.3d at 690 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000), *overruled on other grounds by Ortiz*, 834 F.3d at 765.); *Eaton v. Ind. Dep't of Corrs.*, 657 F.3d 551, 559 (7th Cir. 2011) (reiterating a similarly situated employee must be comparable to a plaintiff in all "material respects").

Plaintiff fails to reference evidence in the record that demonstrates other adjunct professors, who reported to the same Dean or had engaged in similar conduct, were treated more favorably. Plaintiff also fails to identify the religion of the candidate who was selected for the full-time position in December 2017, leaving the Court to question whether this candidate is in the same protected class as Plaintiff. This unsupported and undeveloped legal argument is insufficient to survive a motion for summary judgment. As a result, this Court finds Plaintiff fails to meet the fourth prong of the *McDonnell Douglas* framework to proceed on his claim.

Accordingly, Defendant's summary judgment motion on Plaintiff's claim of disparate treatment based on religion is GRANTED.

### D. Retaliation.

Plaintiff argues he was the subject of retaliation for filing an internal complaint regarding alleged discrimination based on age and ethnicity on December 7, 2017. Plaintiff claims Defendant retaliated against him for bringing the issue of discrimination based on age and ethnicity to Human Resources, by fabricating an untruthful claim of gender-bias by a female student as a basis to end his employment. (D. 1, p. 4). To establish a claim of retaliation under Title VII, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). The Seventh Circuit has instructed:

> Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.

*Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (internal citation omitted). After a thorough review of Plaintiff's internal complaint, the Court finds that his complaint fails

to indicate, or to even create an inference, that Plaintiff was the subject of discrimination because of a protected class.

First, Plaintiff attached as an exhibit to his Response, the e-mail from the female student dated September 26, 2017, making the formal complaint of gender-bias against the Plaintiff, clearly establishing that the complaint was made prior to Defendant even posting the full-time position in November 2017. (D. 32-3, p. 4) (D. 36-12). Second, Plaintiff claims the Dean of the BLIS Department told him that he was selected for the full-time, tenure-track position in May 2017 because of his personality and age, is time-barred. (D. 36-6, p. 2). Finally, Plaintiff did not file his complaint for discrimination with Defendant until December 7, 2017, after he had interviewed with the faculty panel for the full-time position on December 1, 2017, and their recommendations regarding the candidates, which ranked Plaintiff last, had been submitted to the VPAA on December 5, 2017. Therefore, Plaintiff cannot establish he received the lowest ranking out of all the candidates based on his internal complaint, as it did not exist at the time of his initial interview. *See Emerson v. Dart*, 900 F.3d 469, 472 (7th Cir. 2018) ("[Defendants'] alleged misdeeds count as retaliation only if they had actual knowledge of the . . . grievance.").

Accordingly, no reasonable jury could conclude Plaintiff suffered retaliation due to his complaint, and Defendant's Motion on this ground is GRANTED.

### E. ADEA claim based on age discrimination.

The ADEA protects individuals who are forty years old or older from employment discrimination based on opposition to their employer's unlawful practices. 29 U.S.C. §§ 623(d), 631(a). A terminated employee may prevail in an ADEA-based claim if he shows that an adverse action would not have occurred but for his employer's discriminatory motive. *Pitasi v. Gartner Grp. Inc.*, 184 F.3d 709, 714 (7th Cir. 1999). In analyzing ADEA claims on summary judgment,

the courts must determine "whether the evidence would permit a reasonable factfinder to conclude" that plaintiff's opposition to his or her employer's unlawful practices "caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

A plaintiff may survive summary judgment by presenting direct or circumstantial evidence sufficient to establish or to create an inference of intentional discrimination. *Montgomery v. Am. Airlines, Inc*., 626 F.3d 382, 393 (7th Cir. 2010) (internal citation omitted). Circumstantial evidence requires the finder of fact to infer intentional discrimination, while direct evidence is that which proves a fact without requiring an inference. *Lewis v. Sch. Dist. No. 70*, 523 F.3d 730, 742 (7th Cir. 2008). In practice, direct evidence would require something such as an admission by Defendant that Defendant did not hire Plaintiff because of Plaintiff's age. Circumstantial evidence, meanwhile, would allow Plaintiff to defeat a motion for summary judgment if he established a *prima facie* case of retaliation. *See Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020).

Plaintiff may also employ the burden-shifting framework set forth in *McDonnell Douglas* and previously set forth above. Where a plaintiff makes such a showing, the defendant may articulate a "legitimate, nondiscriminatory reason for the adverse employment action," and plaintiff then has the burden of showing that the employer's explanation is pretextual. *Id.* "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action because of her age." *Skiba v. Illinois Cent. R.R. Co*., 884 F.3d 708, 720 (7th Cir. 2018) (internal quotation omitted); *see also McDaniel*, 940 F.3d at 368.

As an initial matter, the Court notes that Plaintiff's claim of age discrimination based on

Defendant's failure to hire him in May 2017 is barred by the statute of limitations. This is the only instance of age discrimination identified in the Complaint. (D. 1, p. 5). However, assuming arguendo that Plaintiff is claiming age discrimination based on failure to hire him for the full-time, tenure-track position in December 2017, this Court finds that this claim fails on the merits.

First, the record is devoid of any direct evidence that age was a factor when selecting a candidate for the full-time position in December 2017. The two instances Plaintiff argues establish age discrimination occurred following his interview for the full-time position in May 2017 and include: (1) the Dean's statement to him that he was not selected for the position in May 2017 because "it is a tenure track position;" and (2) a member of faculty panel that interviewed him told him "not to expect much about your retirement." (D. 32-1, pp. 35, 38) (D. 36, p. 28). Not only do these statements not explicitly refer to Plaintiff's age, they also do not indicate that Plaintiff's age influenced Defendant's decision not to hire him in May 2017 or December 2017. Plaintiff's argument is merely speculative and does not provide enough evidence to overcome summary judgment. *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) (evidence introduced to thwart summary judgment "can include reasonable inferences, but it does not include speculating as to an employer's state of mind, or other intuitions, hunches, or rumors.").

Second, Plaintiff cannot successfully use the *McDonnell Douglas* framework to demonstrate that younger candidates were treated more favorably. The candidate who was hired instead of Plaintiff following the December 2017 interview was fifty-one years old, only three years younger than Plaintiff at the time. (D. 32-2 at ¶ 19). This insignificant difference in age shows that Plaintiff's age was a non-factor in Defendant's decision not to hire him. *See Hartley*, 124 F.3d at 892-93 (Age difference of six years was "presumptively insubstantial" where plaintiff was fifty-one and comparators were "well into their 40's."). Accordingly, Defendant's Motion for Summary

Judgment is GRANTED as to this claim.

## CONCLUSION

For the reasons stated above, Defendant's [32] Motion for Summary Judgment is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff. The case is now TERMINATED. The Clerk is DIRECTED to close this case.

ENTERED this 25th day of August, 2021.

s/ Michael M. Mihm

Michael M. Mihm
United States District Judge